UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GHALIB ABDUL MUNTAQIM-BEY,

                    Petitioner,

v.                                           CASE NO. 10-cv-12478
                                           HONORABLE SEAN F. COX

LLOYD RAPELJE,

                    Respondent.

_____/

**OPINION AND ORDER**
**DENYING THE HABEAS CORPUS PETITION**
**AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

This matter has come before the Court on petitioner Ghalib Abdul Muntaqim-Bey's habeas corpus petition under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's Wayne County, Michigan conviction for second-degree murder, Mich. Comp. Laws § 750.317. Petitioner alleges as grounds for relief that he is innocent of the crime for which he is incarcerated, that the state prosecutor committed misconduct, and that his trial and appellate attorneys were ineffective. The Court has determined from a review of the pleadings and state-court record that Petitioner's claims do not warrant habeas corpus relief. Accordingly, the petition will be denied.

**I. Background**

**A. The Facts, Conviction, Sentence, and Direct Appeal**

Petitioner was charged with first-degree, premeditated murder. The charge arose from allegations that Petitioner beat Richard Taylor, III (Taylor), with a baseball bat in Inkster, Michigan on August 20, 2006. The state trial court provided the following

details about the crime and the testimony at Petitioner's jury trial in Wayne County

Circuit Court:

> Taylor was hospitalized from [the date of the beating] until his death two months later on October 23, 2006.
>
> Dr. Somerset, an assistant Wayne County Medical Examiner, testified [that] the cause of Taylor's death was blunt force trauma to the head and neck consistent with being beaten with a baseball bat. The manner of death was homicide. Dr. Somerset opined there were three major sites of blunt force trauma, any one of which was potentially fatal to Taylor.
>
> On October 13, 2006 Taylor fell out of bed while hospitalized. Taylor lived for several weeks after he fell out of bed. The medical records do not show this fall changed Taylor's medical status in any way. Dr. Somerset opined there was a laceration to the left forehead (which may or may not have been from the fall . . .), but it was minor. The doctor opined generally that the fall "could" be a contributing factor in his death, but that the cause of the death to Taylor was blunt force trauma, not the fall from the bed. Dr. Somerset testified Taylor's fall from the hospital bed did not significantly contribute to Taylor's death because it didn't cause a change in Taylor's status or health.
>
> Donnell Erquhart was a friend of Taylors. On August 12, 2006 he saw Taylor on a bike near Fast Franks, a liquor store, in Inkster. Taylor left Erquhart to buy some "weed" and returned about fifteen minutes later. Erquhart and Taylor went to Fast Franks to buy something to drink. Erquhart saw Taylor tussle with an unknown individual over some marijuana. After the tussle Erquhart and Taylor went to New York Street where they ran into defendant Frank Armstrong, a/k/a Ghalib Muntaqim Bey.
>
> Taylor and Bey apparently had an earlier confrontation which Bey had not forgotten. When Taylor and Bey met, Armstrong (Bey) said, "Taylor was not behind the glass now." The two men got closer and Bey struck Taylor in the head with a bat. Erquhart was about two feet away from Taylor when Bey struck Taylor. Taylor fell off his bike and fell unconscious to the street. Then, Bey struck Taylor again in the head with the bat as Taylor lay unconscious in the street.
>
> Erquhart left the area, as did Bey. Erquhart rode around the corner to Taylor's girlfriend's house and told her "Rick Taylor had a problem."
>
> Erquhart spoke with the police and told them that Frank Armstrong hit Taylor in the head with a bat.

Cross-examination by defense counsel revealed that Erquhart did not initially identify Bey as Taylor's assailant to the police nor did he identify anyone as Taylor's assailant. Erquhart admitted he was under the influence of alcohol and marijuana at the time of Taylor's assault. Erquhart, a cocaine user, first identified Bey as the assailant five days after the incident. Erquhart knew both Ghalib Muntaqim Bey (a/k/a Frank Armstrong) and Armstrong's brother.

A paramedic responded to the area of New York Street on August 20, 2006 and found a person lying unresponsive on the street. The person was bleeding from a laceration behind his left ear and from his forehead. (. . . . The forehead laceration may have been caused by this fall). The person was slightly combative, oriented x1 (as opposed to x4), and smelled of alcohol.

Anthony Hasley was also a witness to the crime. Hasley identified a photograph of Bey as a person who looked like Taylor's assailant. Hasley did not identify Bey at trial. Bey's appearance changed from the time of the crime to trial.

Bey presented an alibi (lack of presence) defense at trial. A witness testified that Bey and he were at a party in Detroit when Taylor was beaten.

The state called Bey's wife in rebuttal. She testified Bey was with her most of the day on August 12, 2006 and left the family home shortly before the time of the offense and did not return until the following morning.

*People v. Muntaqim-Bey*, No. 07-007792-01, Order Denying Def't's Mot. for Relief from

J. (Wayne Cty. Cir. Ct. Apr. 4, 2013) (unpublished). On July 19, 2007, the jury found

Petitioner guilty of the lesser-included charge of second-degree murder, Mich. Comp.

Laws § 750.317, and on August 24, 2007, the trial court sentenced Petitioner to

imprisonment for 336 to 500 months (twenty-eight years to forty-one years, eight

months).

On appeal from his conviction, Petitioner argued through counsel that: (1) his

wife's rebuttal testimony was inadmissible, and trial counsel was ineffective for failing to

object to the testimony on the basis of the husband-wife privilege; (2) the prosecutor misstated a witness's identification testimony, and trial counsel was ineffective for failing to object; and (3) the trial court incorrectly scored prior record variable one of the state sentencing guidelines. In a *pro se* supplemental brief, Petitioner argued that the trial court erred in admitting his wife's rebuttal testimony because the prosecution failed to provide the defense with prompt notice of the witness.

The Michigan Court of Appeals rejected Petitioner's claims and affirmed his conviction and sentence in an unpublished, *per curiam* decision. *See People v. Muntaqim-Bey*, No. 280323, 2009 WL 279380 (Mich. Ct. App. Feb. 5, 2009). Petitioner raised the same four claims in the Michigan Supreme Court, which denied leave to appeal on June 23, 2009, because it was not persuaded to review the issues. *See People v. Muntaqim-Bey*, 483 Mich. 1113; 766 N.W.2d 846 (2009) (table).

## B. The *Pro Se* Habeas Corpus Petition and State Collateral Review

On June 23, 2010, Petitioner commenced this action by filing a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.) He argued that (1) the trial court deprived him of due process and a fair trial by admitting his wife's rebuttal testimony, despite the prosecution's failure to provide timely notice of the witness, (2) trial counsel was ineffective for failing to object to the prosecution's expert witness, (3) trial counsel was ineffective for failing to present a defense to the charges, and (4) trial counsel was ineffective for failing to object to the trial court's (a) improper statements to the jury, (b) jury instruction on causation, and (c) refusal to permit the jury to review the witnesses' statements to the police.

The State moved to dismiss the petition on the basis that Petitioner failed to exhaust state remedies for three of his four claims. (Docket No. 10.) Former United States District Judge Patrick J. Duggan agreed that the habeas petition was a "mixed" petition of one exhausted claim and three unexhausted claims. However, instead of granting the State's motion, Judge Duggan held the habeas petition in abeyance pending exhaustion of state remedies and then closed this case for administrative purposes. (Docket No. 12.)

Petitioner subsequently filed a motion for relief from judgment in the state trial court. He alleged as grounds for relief from judgment that: (1) the prosecutor presented tainted testimony on the cause of the victim's death; (2) he was actually innocent of the homicide, because the cause of death was the fall from bed; (3) trial counsel was ineffective for failing to produce the victim's complete medical records to show that the cause of death was the fall from bed; (4) he was denied his right of confrontation by his inability to cross-examine witnesses regarding the victim's medical treatment after falling out of bed; and (5) appellate counsel was ineffective for failing to raise these issues on appeal.

The trial court denied Petitioner's motion after concluding that none of his claims had merit, that all of the claims, except the one about appellate counsel, could have been raised on direct appeal, and that Petitioner was not entitled to relief under Michigan Court Rule 6.508(D). *See People v. Muntaqim-Bey*, No. 07-007792-01, Order Denying Def't's Mot. for Relief from J. (Wayne Cty Cir. Ct. Apr. 4, 2013). The Michigan Court of Appeals denied Petitioner's application for leave to appeal the trial court's decision on the basis that Petitioner had failed to establish entitlement to relief under

Rule 6.508(D).  *See People v. Muntaqim-Bey*, No. 318454 (Mich. Ct. App. Dec. 20, 2013.)  On September 5, 2014, the Michigan Supreme Court denied leave to appeal for the same reason.  *See People v. Muntaqim-Bey,* 497 Mich. 852; 852 N.W.2d 168 (2014) (table).

## C.  The Amended Habeas Petition, Responsive Pleading, and Reply

Petitioner subsequently retained counsel, who filed an amended habeas corpus brief (docket no. 19) and a motion to lift the stay in this case (docket no. 18).  In his amended brief, Petitioner argues that:  (1) he is innocent of the crime for which he is incarcerated; (2) the prosecutor committed misconduct by (a) misrepresenting evidence during closing arguments and (b) failing to promptly notify the defense of the rebuttal witness; (3) trial counsel was ineffective for (a) failing to investigate the circumstances surrounding the victim's death, (b) not protecting his right of confrontation, and (c) failing to object to the rebuttal witness's testimony on the basis of the husband-wife privilege; (4) appellate counsel was ineffective for failing to raise these issues on direct appeal; and (5) his sentence was imposed contrary to the Fourteenth Amendment.  Judge Duggan granted Petitioner's motion to lift the stay, re-opened this case, and ordered the State to file an answer to the amended petition.  (Docket No. 23.)

The State filed an answer to the amended petition, claiming that Petitioner failed to exhaust state remedies for some of his claims and procedurally defaulted other claims.  The State also maintains that the state courts' decisions were not contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts.  (Docket no. 24). Petitioner filed a reply in which he asserts that his claims are exhausted, meritorious, and not procedurally defaulted.  (Docket no. 26).  Petitioner

subsequently withdrew his sentencing claim (docket no. 29), and, in the meantime, the case was reassigned to this Court due to Judge Duggan's retirement.

The case is now ready for an adjudication of Petitioner's claims regarding actual innocence, the prosecutor's conduct, and trial and appellate counsel. The Court "cut[s] to the merits here," *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010), because Petitioner's claims do not warrant habeas relief, the exhaustion requirement is not jurisdictional, *Castille v. Peoples*, 489 U.S. 346, 349 (1989), and the Court is not required to address a procedural-default issue before deciding against the petitioner on the merits. *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). A procedural-default analysis would add "nothing but complexity to the case." *Babick*, 620 F.3d at 576.

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

" 'In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual

issue made by a State court shall be presumed to be correct,' unless rebutted by 'clear and convincing evidence'. 28 U.S.C. § 2254(e)(1)." *Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1384 (2016). Lastly, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. Analysis

### A. Actual Innocence

Petitioner alleges that this case is fundamentally about innocence, that his trial was fraught with constitutional error, and that he is innocent of the crime for which he is incarcerated. He claims to be entitled to a review of his claims on the merits, should the Court determine that any of his claims are procedurally defaulted, and he contends that his innocence serves as a context for the constitutional errors that occurred at trial.

The Court has not determined that any of Petitioner's claims are procedurally defaulted, and claims of actual innocence generally do not "state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id.*

In capital cases, the Court may assume that "a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417. But this is not a capital case, and even if it were, "the threshold showing for such an assumed right would necessarily be extraordinarily high."

*Id.* "[W]hatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it." *House v. Bell*, 547 U.S. 518, 555 (2006). The testimony at Petitioner's trial supports the jury's verdict, and Petitioner has not presented the Court with any new and reliable evidence to support his claim of innocence. The Court therefore concludes that, to the extent Petitioner is asserting a freestanding claim of actual innocence, his claim is not cognizable in this habeas corpus case. He has not met the "extraordinarily high" threshold needed to establish actual innocence.

## B. The Prosecutor

The second habeas claim alleges that the state prosecutor committed misconduct by (1) misrepresenting evidence during closing arguments and (2) producing a rebuttal witness without promptly notifying defense counsel of his intent to call the witness.

### 1. Clearly Established Federal Law

"Claims of prosecutorial misconduct are reviewed deferentially" in a habeas case, *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), and "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). When the issue is the prosecutor's remarks during closing argument, the "clearly established Federal law" is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *Parker v. Matthews*, 567 U.S. 37, __, 132 S. Ct. 2148, 2153 (2012) (*per curiam*). In *Darden*, the Supreme Court stated that

> it "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)]. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting

conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.*, at 642, 94 S.Ct., at 1871.

*Darden*, 477 U.S. at 181.

"The prosecution necessarily has 'wide latitude' during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009) (quoting *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008)). The Court must analyze "disputed comments in the context of the trial as a whole and recogniz[e] that inappropriate comments alone do not justify reversal where the proceedings were 'otherwise fair.' " *Henry*, 545 F.3d at 377 (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)).

"In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citing *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979)). On habeas review, an error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

## 2. The Prosecutor's Closing Argument

Petitioner asserts that the prosecutor recast Mr. Hasley's testimony during closing arguments from one of not being able to identify Petitioner to one of positive identification. In doing so, alleges Petitioner, the prosecutor corroborated Mr. Erquhart's identification testimony. The Michigan Court of Appeals reviewed this claim for "plain

error" because Petitioner did not preserve the issue by objecting at trial. The Court of Appeals then concluded that the prosecutor's argument about Hasley was proper because it was based on the evidence and reasonable inferences therefrom.

"Misrepresenting facts in evidence can amount to substantial error because doing so 'may profoundly impress a jury and may have a significant impact on the jury's deliberations.' " *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000) (quoting *DeChristoforo*, 416 U.S. at 646). But prosecutors are "permitted a certain degree of latitude in summation," *United States v. Barker*, 553 F.2d 1013, 1025 (6th Cir. 1977), and they "must be given leeway to argue reasonable inferences from the evidence." *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)

The disputed comment here (quoted in context) reads:

The corroboration [of Erquhart's testimony] we gained from the testimony of the tall, slender man. . . . . Mr. Hasley.

Now understand what's going on with Mr. Hasley's head, cause you got to understand that. He comes in at a point in time when what? . . . . [H]e's thinking he's in the soup when he comes and sees that man [Detective Anthony Delgreco] in November. November 6. . . . . And *he fills out a statement and identifies from the lineup, my man, the defendant.* The only thing he says that day from his testimony and from the detective's testimony is, you know the beard is a little different color. That face, you got to age it some, and the beard is a little bit more like the color of my man in the third spot but the face is the same.

(Trial Tr. Vol. II, at 131-32, July 18, 2007) (emphasis added)

Petitioner alleges that the italicized statement in the previous paragraph misrepresented Hasley's trial testimony that he was only fifty percent sure of his identification of Petitioner in a photographic array. The record, however, supports the prosecutor's comment. Hasley viewed a photographic array consisting of six photographs and circled Petitioner's photograph in position six. Hasley explained at trial

that the person in the circled photograph looked like the man who had beat Taylor, although the man that he saw beating Taylor was a little older.[1]  Hasley also stated at trial that he recognized the face in the photograph and that he thought it was similar to the face he had seen, but that he told the officer at the photographic showing that the man's facial hair was whiter and that the picture must have been taken some years earlier.  (*Id.* at 27-30.)

Although Hasley was not one hundred percent sure of his identification at the time of the photographic showing or at trial (*id.* at 29-31, 35), he admitted that the photograph he had picked looked like the suspect (*id.* at 34).  Detective Anthony Delgreco, moreover, testified that Hasley had

> looked at number six [Petitioner] and he kept saying, it looks like this guy but the picture is younger.  He kept saying that is a younger picture of him. And he pointed up to number three, and he said he looks older like this guy because of the color in the beard.  But then he goes, but number six.

(*Id.* at 52.)  Detective Delgreco's colloquy with the prosecutor continued:

> Q (by the prosecutor)  And did [Hasley] make reference to number six's face?
>
> A (by Detective Delgreco)  Just kept saying that he looks younger, but that was him.
>
> Q  His facial features?
>
> A  Yes.
>
> Q  And with the addition of the facial beard change?
>
> A  Correct.

---

[1]  The photograph of Petitioner was six or seven years old.  (Trial Tr. Vol. II, at 51, July 18, 2007.)

(*Id.* at 53.)  Detective Delgreco went to say that Hasley stated in a handwritten statement, which followed the photographic array, that number six looked like the suspect, but that the gray in the suspect's beard made him appear older.  (*Id.* at 56.)

The Court concludes from the record that the prosecutor's disputed comment – that Hasley identified Petitioner in the photographic array -- was not improper.  It was a reasonable inference from the evidence at trial.

Even if the Court were to assume that the prosecutor's closing comment was improper, the trial court instructed the jurors several times that the attorneys' statements and arguments were not evidence.  (Trial Tr. Vol. I, at 122, July 17, 2007; Trial Tr. Vol. II, at 125-26, 151, 154, July 18, 2007.)  Because "juries are presumed to follow their instructions," *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), the prosecutor's comment could not have had a substantial and injurious effect on the jury's verdict and was harmless.

### 3.  The Rebuttal Witness

Petitioner claims that the prosecutor undermined his alibi defense and "gutted the defense case" by producing Petitioner's wife as a rebuttal witness without giving prompt notice of the witness, as required by Mich. Comp. Laws § 768.20(3).  The Michigan Court of Appeals determined that the trial court did not abuse its discretion in allowing Petitioner's wife to testify in rebuttal, because Petitioner's wife did not approach the prosecutor with information until the morning of the day she testified.

This Court finds no merit in Petitioner's claim because it is based on an alleged violation of Michigan's alibi statute, which requires the prosecution to serve the defendant with notice of the witnesses whom the prosecuting attorney intends to call on

rebuttal to controvert the defendant's defense at trial. Mich. Comp. Laws § 768.20(2). The prosecution is under a continuing duty to disclose promptly the names of additional witnesses who come to the prosecutor's attention after filing the notice of rebuttal. Mich. Comp. Laws § 768.20(3).

The prosecutor's alleged violation of § 768.20 is not a basis for habeas relief, because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Thus, even if Mrs. Muntaqim-Bey's testimony was inappropriate rebuttal testimony under § 768.20, Petitioner's claim is not cognizable on federal habeas review, absent a showing that Petitioner was denied a fair trial. *Slack v. Cason*, 258 F. Supp. 2d 727, 733 (E.D. Mich. 2003).

Petitioner was not denied a fair trial, because Mrs. Muntaqim-Bey testified at trial that she did not seek out the prosecutor until the morning of the day she testified. She explained that she did not begin to piece the facts together until after she heard the previous day's testimony and began to think about it. She maintained that the first time she said anything to anybody about Petitioner being with her on the date of the crime was on the morning of her testimony. (Trial Tr. Vol. II, at 104, 111-12, July 18, 2007.)

Defense counsel objected to Mrs. Muntaqim-Bey's trial testimony on the basis that the prosecutor failed to promptly notify him that Mrs. Muntaqim-Bey would be testifying. (*Id.* at 114-23.) But the prosecutor confirmed that Mrs. Muntaqim-Bey had approached him for the first time that morning, and the trial court pointed out that it had

given defense counsel time to speak with Mrs. Muntaqim-Bey before she testified.  (*Id.* at 121-23.)  Trial courts have "considerable discretion" under state law "to allow or disallow the testimony of rebuttal witnesses when a timely notice has not been filed." *People v. Travis*, 443 Mich. 668, 679-80; 505 N.W.2d 563, 568 (1993).

Furthermore, no constitutional error occurred, because the Constitution does not require pretrial disclosure of any impeachment evidence related to the defendant's case.  *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002) (citing *United States v. Presser*, 844 F.2d 1275 (6th Cir. 1988)).  Thus, "there is no constitutional violation cognizable on habeas here," *id.*, and Petitioner is not entitled to relief on the basis of his claim about the prosecutor's notice regarding the rebuttal witness.

## C.  Trial Counsel

The third habeas claim alleges ineffective assistance of trial counsel.  The state trial court adjudicated this claim during post-conviction proceedings and found no merit in it.

The "clearly established Federal law" here is *Strickland v. Washington*, 466 U.S. 668 (1984).  *Pinholster*, 563 U.S. at 189.  Under *Strickland*, Petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687.  The "deficient performance" prong of this test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.*  There must be

"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693). In a habeas case, moreover,

> review is "doubly deferential," *Cullen v. Pinholster*, 563 U.S. 170, 190, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra*, supra, at ——, 134 S.Ct., at 13.

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016).

### 1. Failure to Investigate

Petitioner alleges that trial counsel was ineffective for failing to investigate the circumstances of Taylor's death. Petitioner points out that Taylor died about two months after the beating and after falling out of bed and sustaining an additional injury. Petitioner asserts that Dr. Somerset, the medical examiner, relied on Taylor's medical records, provided few details about the cause of death, and admitted that the fall from bed could have contributed to Taylor's death. Petitioner maintains that defense counsel should have conducted interviews with the witnesses whose observations formed the crux of Dr. Somerset's opinion on the cause of death.

The state trial court adjudicated Petitioner's claim during post-conviction proceedings and concluded that Petitioner could have raised his claim on direct appeal.

The trial court also declined to second guess defense counsel's trial strategy, because Petitioner had produced no evidence to support his contention that Taylor's fall from bed caused his death.

Under *Strickland*, attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence," *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005), and "[t]he failure to call favorable witnesses can amount to ineffective assistance where it results in prejudice to the defense." *Pillette v. Berghuis*, 408 F. App'x 873, 884 (6th Cir. 2010). But "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

Dr. Somerset testified on direct examination that Taylor died from blunt force injuries, which were consistent with being hit with a baseball bat. (Trial Tr. Vol. I, 153, July 17, 2007.) To his credit, defense counsel questioned Dr. Somerset on cross-examination about Taylor's fall from bed ten days before he died. Defense counsel elicited Dr. Somerset's testimony that the fall and the resulting laceration to Taylor's forehead may have contributed to Taylor's death, given Taylor's fragile state of health. (*Id.* at 157-59.)

Dr. Somerset explained, however, that Taylor was examined after the fall and that there was really no new injury or change in Taylor's status, except for the minor

laceration to his left forehead.  In other words, Taylor's state of health did not change after he fell out of bed.  (*Id.* at 158-60.)

Petitioner has not named any witnesses who would have been willing and capable of disputing Dr. Somerset's opinion regarding the cause of death and the effect of Taylor's fall from bed.  Furthermore, because the available evidence did not support the conclusion that Taylor died from the fall, as opposed to the head and neck fractures that he sustained during the beating, defense counsel apparently decided not to investigate the matter any further. This was a reasonable decision under the circumstances and in light of Petitioner's alternative defense that he was elsewhere when the crime occurred.  Counsel's performance was not deficient, and his failure to investigate witnesses who might have been able to testify about Taylor's fall from bed did not prejudice the defense.

### 2.  The Confrontation Clause

Petitioner alleges that his right of confrontation was violated by Dr. Somerset's reliance on medical records compiled by persons who did not testify at Petitioner's trial. Petitioner blames his trial attorney for failing to protect his right of confrontation.

The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees the defendant in a criminal prosecution "the right . . . to be confronted with the witnesses against him."  U.S. CONST. amend. VI.  "The Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him."  *Giles v. California*, 554 U.S. 353, 358 (2008) (citing

*Crawford v. Washington*, 541 U.S. 36, 68 (2004)). In other words, "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68.

Petitioner relies on *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), in which the Supreme Court held that affidavits reporting the results of forensic analysis on cocaine were testimonial statements subject to the requirements of the Sixth Amendment. Petitioner's reliance on *Melendez-Diaz* is misplaced for a few reasons. First, it was not decided until almost two years after Petitioner's trial. Second, Dr. Somerset did not rely exclusively on the medical reports. He performed the autopsy on Taylor and, for purposes of testifying, he combined what he learned from the autopsy with the medical records to form his expert opinion, because the records and the autopsy "[told] the same story." (Trial Tr. Vol. I, 139-40, July 17, 2007.)

Finally, the records on which Dr. Somerset relied pertained to Taylor's treatment (*id.* at 137), and the Supreme Court stated in *Melendez-Diaz* that medical reports created for treatment purposes are not testimonial statements. *Melendez-Diaz*, 557 U.S. at 312 n. 2. An objection to Dr. Somerset's use of medical records on confrontation grounds would have been futile, and "the failure to make futile objections does not constitute ineffective assistance." *Altman v. Winn*, 644 F. App'x 637, 644 (6th Cir.), *cert. denied sub nom. Altman v. Brewer*, 137 S. Ct. 76 (2016).

### 3. The Husband-Wife Privilege

Petitioner's final claim about defense counsel is that counsel should have objected to Mrs. Muntaqim-Bey's rebuttal testimony. Petitioner asserts that his wife's testimony violated the husband-wife privilege.

Under Mich. Comp. Laws § 600.2162(2), a wife may choose not to testify against her husband. But, as the Michigan Court of Appeals pointed out, Mrs. Muntaqim-Bey waived this privilege when she approached the prosecutor and agreed to testify against Petitioner. A defense objection based on § 600.2162(2) would have lacked merit, and "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

## D. Appellate Counsel

In his fourth and final claim, Petitioner alleges that his appellate counsel on direct review was ineffective for failing to submit (or failing to properly submit) his current issues. The state trial court adjudicated this issue during post-conviction proceedings and concluded that Petitioner's appellate counsel was not ineffective for failing to raise Petitioner's claims on appeal because none of his claims had merit.

Petitioner had no constitutional right to compel his appellate attorney to make every nonfrivolous argument that he suggested to the attorney. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). To demonstrate that appellate counsel was ineffective, Petitioner must show (1) that his attorney acted unreasonably in failing to discover and raise nonfrivolous issues on appeal and (2) there is a reasonable probability that he would have prevailed on appeal if his attorney had

raised the issues. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Strickland*, 466 U.S. at 687-91, 694).

Petitioner's appellate attorney raised some of the same issues, or similar issues, that Petitioner has included in his habeas petition. The failure to raise the remainder of Petitioner's habeas claims in the appeal of right did not amount to deficient performance, because those claims lack merit for the reasons given above. Additionally, there is not a reasonable probability that Petitioner would have prevailed on appeal if his attorney had raised all of Petitioner's claims on direct appeal. The Court's inquiry, therefore, "is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

## IV. Conclusion

Petitioner has failed to show that he is in custody in violation of federal law. The Court, therefore, finds no merit in the claims that the state courts rejected on procedural grounds. As for the issues that the state courts adjudicated on the merits, the state courts' decisions were not contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable determinations of the facts. The state courts' decisions certainly were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. Accordingly, Petitioner's application for the writ of habeas corpus is denied.

## V. Certificates of Appealability

Petitioner may not appeal this opinion and order without a certificate of appealability, 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1), and a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Reasonable jurists would not disagree with the Court's resolution of Petitioner's constitutional claims, nor conclude that Petitioner's claims deserve encouragement to proceed further. The Court therefore declines to issue a certificate of appealability.


Dated: May 4, 2017                         s/Sean F. Cox
                                           Sean F. Cox
                                           U. S. District Judge


I hereby certify that on May 4, 2017, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

                                           s/Jennifer McCoy
                                           Case Manager